# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF SOUTH CAROLINA
## ANDERSON DIVISION

CIVIL ACTION NO. 8:07-cv-03406-HMH-WMC

| | |
|---|---|
| MELODY EADIE, <br><br> Plaintiff, <br><br> v. <br><br> ANDERSON COUNTY DISABILITIES AND SPECIAL NEEDS BOARD, <br><br> Defendant. | MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Defendant has herewith moved this Court for summary judgment on all causes of action raised against it. The Defendant submits this Memorandum in support of such motion.

## NATURE OF THE CASE

This action was commenced by the filing of a Summons and Complaint in Anderson County, South Carolina. The Complaint arises from the termination of Plaintiff's employment with the Anderson County Disabilities and Special Needs Board ("the Board"), which was effective on or about July 19, 2006. Plaintiff alleges that she was terminated for reporting suspected abuse and that such termination was in violation of public policy; that she was terminated as a result of her race (white) in violation of Title VII; that her termination was retaliation for her report of the alleged racial discrimination/harassment in violation of Title VII; and that Defendant violated the FMLA by firing Plaintiff based on her request for and use of FMLA leave.

The Board filed a timely Notice of Removal and Answer, wherein it denied many of the material allegations of the Complaint and pled numerous affirmative defenses. The Board now moves for summary judgment as to all allegations made by the Plaintiff. The factual and legal bases for the motion are more fully set forth below.

**STATEMENT OF FACTS**

The Plaintiff began her employment with the Board in 2000, working third shift in a residential facility. (See Deposition of Melody Eadie, p. 15, l. 4-25.) In or around April of 2002, Plaintiff was hired to be a One-on-One Day Program Specialist for a consumer named Maurice, who has special needs including mental retardation and autism. Maurice had previously been receiving respite (or home) care from the Board, and the Board wanted to bring him into the Work Activity Center ("WAC") in order to provide additional services to him, including socialization and work training. (See Affidavit of Clark Nesbitt, attached hereto as Exhibit 1.)

Plaintiff's position was full-time temporary, which did not typically include health and dental benefits, but special accommodation was made to provide such benefits to Plaintiff because of Maurice's perceived extra special needs. In addition, the Board requested and received additional outlier funding from the South Carolina Department of Disabilities and Special Needs Board in order to be able to pay the Plaintiff $12.00 an hour, even though the typical starting salary of a comparable employee at that time was $8.00 an hour. (Id.)

The Plaintiff's position as a One-on-One required her to provide direct care training to Maurice, face-to-face, at all times. Essentially, the position required Plaintiff to be with Maurice all day (in essence, to be his "shadow") and to assist him and

2

manage him in any way needed, including but not limited to his behavior, hygiene, and meals. (Id.)

On June 15, 2006, the Board's Human Resource Manager, Martha Jones (white female) met with Plaintiff at Plaintiff's request. (See Affidavit of Martha Jones, attached hereto as Exhibit 2.) During the meeting, Plaintiff complained about perceived mistreatment by management and co-workers.[1] According to Plaintiff, she did NOT tell Martha Jones that she felt she was being treated differently because she was white and her supervisors were black. (See Plaintiff Depo. p. 73, l. 24 – p. 75, l. 18.) Among other things, Plaintiff was upset about a written warning she had received on June 13, 2006. She was also upset about riding the van with Maurice, and she brought up an incident of alleged abuse (the "abuse incident") that she stated had occurred approximately one year before. (See Exhibit 2 attached hereto.)

As a result of the meeting, Martha Jones thoroughly investigated the alleged abuse incident and determined that Plaintiff had talked to a supervisor approximately two (2) years earlier about an incident involving Joanne Whitner and a consumer, but that Plaintiff had specifically stated she was not reporting abuse and had not reported the abuse as required by the Board's policies and South Carolina law. Martha Jones also took the Plaintiff to the Anderson County Sheriff's Office to file a report. (See Exhibit 2 attached hereto. See also Plaintiff Depo. p. 62, l. 25 – p. 63, l. 18.) However, the investigation by the Sheriff's Department was stopped at the Plaintiff's request. (See Plaintiff Depo. p. 64, l. 24 – p. 65, l. 8.)

---

[1] Plaintiff cannot recall whether she had previously complained to Martha Jones about problems with her supervisors. (See Plaintiff Depo. p. 42, l. 21 – 25.)

3

On July 17, 2006, partly in response to Plaintiff's request not to have to ride the van with Maurice, Plaintiff received a Memorandum from the Director of Day Services, Clark Nesbitt. Because various supervisors had observed Plaintiff on numerous occasions away from Maurice and taking unauthorized breaks, the Memo also stated that Plaintiff was to have one 15 minute personal break without Maurice and reiterated that she was to be no more than three (3) yards away from Maurice at all times. (See Exhibit 1 attached hereto and Exhibit N attached thereto.)

On July 19, 2006, after seeing Plaintiff on numerous occasions (both on that day and over a period of time) away from Maurice and taking unauthorized breaks, Clark Nesbitt gave Plaintiff a memorandum that her personal break was to be from 10:35 a.m. until 10:50 a.m. (See Exhibit 1 and Exhibit O attached thereto. See also Deposition of Clark Nesbitt, p. 10, l. 18 – p. 11, l. 13.)[2] Plaintiff admits that she received the memo on July 19, 2006 and that she had a smoke break that morning. (See Plaintiff Depo. p. 102, l. 7 – p. 103, l. 15.) Mr. Nesbitt told the Plaintiff that the break time designated in the memorandum was effective immediately. (See Nesbitt Depo. p. 11, l. 21-23.) Plaintiff admits that she received the memo before taking a second smoke break at approximately 2:05 p.m. (See Plaintiff Depo. p. 103, l. 4 – 15.)

On July 19, 2006, Mr. Nesbitt saw Plaintiff on numerous occasions away from Maurice and saw her taking a second, unauthorized smoke break at approximately 2:05 p.m., specifically in disregard of the memo given several hours earlier. Based thereon, he prepared a written warning to the Plaintiff. (See Exhibit 1 attached hereto and Exhibit P attached thereto. See also Nesbitt Depo. p. 10, l. 9 – p. 11, l. 13; p. 14, l. 15 – p. 16, l.

---

[2] Plaintiff admits that as early as May 16, 2002, the Board had established specific rules about and times for employee smoke breaks. (See Plaintiff Depo. p. 28, l. 4 – p. 20. See also Exhibit 1 and Exhibit C attached thereto.)

25.) Based on past experience with the Plaintiff, Mr. Nesbitt asked that the Human Resource Manager, Martha Jones, be present when he gave her the written warning. (See Nesbitt Depo. p. 29, l. 3 – p. 30, l. 13.) During the meeting, Plaintiff became very argumentative, and Mrs. Jones asked the Plaintiff to return to her work station. When Plaintiff refused, Mrs. Jones, Mr. Nesbitt and Lynn Bowie all left Mr. Nesbitt's office, with Plaintiff still sitting there and refusing to leave. (See Exhibit 2 attached hereto. See also Nesbitt Depo. p. 18, l. 23 – p. 19, l. 14.)

In Mrs. Jones' opinion, Plaintiff's actions and behavior during the July 19, 2006 meeting constituted insubordination and disregard of authority. Based thereon, Mrs. Jones returned to her office and reviewed Plaintiff's file, which revealed repeated insubordination, failure to perform her assigned duties, not displaying a good attitude toward coworkers and supervisors, leaving her work station without permission, leaving her individual consumer unattended, and the receipt of 4 warnings in 2 years. After speaking with the Board's Executive Director, Mrs. Jones made the decision to terminate the Plaintiff. (See Exhibit 2 attached hereto.)

## ARGUMENTS

### I. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

Plaintiff's First Cause of Action alleges that she was terminated for reporting an incident of alleged abuse of one of Defendant's consumers by another employee. Under South Carolina common law, an at-will employee may have a tort cause of action for wrongful discharge where his/her discharge "constitutes [a] violation of a clear mandate of public policy." Antley v. Shepherd 340 S.C. 541, 532 S.E.2d 294 (Ct.App.2000)

5

(quoting Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985)). "The exception has been applied to situations where an employer requires an employee to violate a criminal law, and situations where the reason for the employee's termination was itself a violation of the criminal law, but it has never been limited to such situations." Id. (quoting Garner v. Morrison Knudsen Corp., 318 S.C. 223, 456 S.E.2d 907 (1995). The "public policy exception" to the at-will doctrine is to be very narrowly applied. *See* Merck v. Advanced Drainage Systems, Inc., 921 F.2d 549 (4th Cir.1990).

In approximately 2004, the Plaintiff told her immediate supervisor about an incident involving another employee and a consumer. However, Plaintiff stated that she was not reporting "abuse." Nevertheless, the Human Resource Manager at the time spoke to the employees allegedly involved and found Plaintiff's allegations to be unsubstantiated. (See Exhibit 2 attached hereto.) Plaintiff did not "report" the abuse to any law enforcement or regulatory agency.[3] (See Plaintiff Depo. p. 52, l. 24 – p. 53, l. 12.) The Board followed the applicable policies and state laws in effect at that time, and there is no evidence that Plaintiff's termination some two (2) years later was in retaliation for her initial "report" of the incident in 2004.

The alleged abuse incident was brought up again in the June 15, 2006 meeting between Plaintiff and Martha Jones. Mrs. Jones (who was not the Human Resource Manager at the time of the initial "report" of the 2004 incident) investigated the matter and even took the Plaintiff to the Anderson County Sheriff's Office to file an incident

---

[3] In 2004, S.C. Code Ann. §43-35-25 required certain persons, including social workers and caregivers, who have reason to believe that a vulnerable adult has been or is likely to be abused, neglected, or exploited to report the incident within twenty-four hours or the next business day to the Long Term Care Ombudsman Program for incidents occurring in facilities and to the Adult Protective Services Program for incidents occurring in all other settings.

report.[4] Again, there is no evidence that Plaintiff's termination was in retaliation for the 2006 "report" of the alleged abuse incident in 2004.

As Plaintiff has no evidence that her termination was in retaliation for the 2004 or the 2006 "report" of the alleged 2004 abuse incident, the Board is entitled to summary judgment on Plaintiff's First Cause of Action for wrongful termination in violation of public policy.

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SECOND CAUSE OF ACTION FOR RACE DISCRIMINATION.

Plaintiff's Second Cause of Action alleges discrimination based on her race (black) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.,* as amended. As discussed further below, the Board is entitled to summary judgment as to this cause of action for the following reasons: (1) Plaintiff cannot establish a prima facie case of racial discrimination; and (2) the Board had legitimate, non-discriminatory reasons for Plaintiff's dismissal, which Plaintiff cannot show are pretextual.

42 U.S.C. §2000e-2(a)(1) makes it unlawful for an employer:

"to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

Plaintiff would presumably argue that she can establish a *prima facie* case of racial discrimination under the framework set out in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "As summarized in Evans v. Technologies & Service Co., 80 F.3d 954 (4th Cir.1996), under the McDonnell Douglas three-step framework, the plaintiff-employee must first prove a

---
[4] The investigation by the Sheriff's Department was stopped at the Plaintiff's request.

7

*prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Mackey v. Shalala, 360 F.3d 463 (4th Cir.2004). The ultimate burden of persuading the trier of fact that an employer intentionally discriminated against an employee remains at all times with the employee. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981).

### A. PLAINTIFF CANNOT PROVE A *PRIMA FACIE* CASE OF DISCRIMINATION UNDER TITLE VII.

To establish a *prima facie* case of discrimination under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See* Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124 (4th Cir.2002). At the very least, Plaintiff cannot establish prongs (2) or (4) and therefore cannot establish a *prima facie* case of racial discrimination.

First, Plaintiff cannot establish the second prong of her *prima facie* case because she cannot show that her job performance was satisfactory. This prong of a *prima facie* case has also been characterized as requiring an employee to prove that, at the time of the adverse employment action, she was performing at a level that met her employer's legitimate job expectations. *See* Brinkley v. Harbour Recreation Club, 180 F.3d 598 (4th

Cir.1999) (abrogation on other grounds recognized by <u>Hill v. Lockheed Martin Logistics Management, Inc.</u>, 354 F.3d 277 (4th Cir.2004).

The <u>only</u> conclusion that can be drawn from the evidence is that Plaintiff's job performance was <u>not</u> satisfactory and that she was <u>not</u> performing at a level that met the Board's legitimate job expectations. The Plaintiff's position as a One-on-One required her to provide direct care training to Maurice, face-to-face, at all times. Essentially, the position required Plaintiff to be with Maurice all day (in essence, to be his "shadow") and to assist him and manage him in any way needed, including but not limited to his behavior, hygiene, and meals. Because of perceived extra special needs of Maurice, Plaintiff was paid more and received more benefits than comparable employees in order to compensate her for caring for, managing, and training her assigned consumer.

However, by the time of her termination on July 19, 2006, it was clear that Plaintiff was no longer fulfilling the Board's expectations regarding Maurice. Specifically, Plaintiff was observed on numerous occasions away from Maurice and taking unauthorized breaks. Based thereon, Plaintiff was given a written memorandum on July 17, 2006, which reiterated that she was to have one 15 minute personal break without Maurice and that she was to be no more than three (3) yards away from Maurice at all times. She was also given a memorandum on July 19, 2006, which set her daily personal break from 10:35 a.m. until 10:50 a.m. Despite receiving these memoranda, which Plaintiff admits, she was observed on July 19, 2006 away from Maurice and taking a second, unauthorized smoke break at approximately 2:05 p.m.

During a counseling session to receive a written warning for taking the second, unauthorized break, Plaintiff became argumentative and refused to return to her work station as instructed by the Human Resource Manager, Martha Jones. A review of her file by Mrs. Jones revealed repeated insubordination, failure to perform her assigned duties, not displaying a good attitude toward coworkers and supervisors, leaving her work station without permission, leaving her individual unattended, and the receipt of 4 warnings in 2 years. Based on Plaintiff's insubordination and disregard of authority during the counseling session and the documentation contained in her file, it is clear that Plaintiff was <u>not</u> performing at a level that met the Board's legitimate job expectations.[5] Therefore, she cannot establish prong (2) of her *prima facie* case of discrimination, and the Board is entitled to summary judgment.

In addition, Plaintiff cannot establish the fourth prong of her *prima facie* case, as she cannot show that other employees who are not members of the protected class were retained under apparently similar circumstances. In order to satisfy this prong, "[P]laintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See* Ward v. City of North Myrtle Beach, 457 F.Supp.2d 625 (D.S.C.2006) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577 (6th Cir.1992)).

Because Plaintiff cannot establish a *prima facie* case of race discrimination under Title VII, the Board is entitled to summary judgment herein.

---

[5] In addition, see Plaintiff's April 12, 2006 Performance Appraisal, attached to Exhibit 1 as Exhibit Q, which reveals that Plaintiff received a 70 out of 100 for productivity, 70 out of 100 for attendance, 69 out of 100 for creativity, 67 out of 100 for adherence to policy, and 70 out of 100 for interpersonal relationships.

### B. THE BOARD HAD LEGITIMATE, NON-DISCRIMINATORY REASONS TO DISMISS PLAINTIFF.

Even if Plaintiff could establish a *prima facie* case, the Board had legitimate, non-discriminatory reasons for her termination, including repeated insubordination, failure to perform her assigned duties, not displaying a good attitude toward coworkers and supervisors, leaving her work station without permission, leaving her individual unattended, and the receipt of 4 warnings in 2 years. Once the Board provides a nondiscriminatory reason for terminating Plaintiff, the burden shifts back to the Plaintiff to show that the given reason was pretextual. "Under the McDonnell Douglas framework, in order to survive a motion for summary judgment, the plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." Mackey v. Shalala, supra (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, (2000)). Plaintiff cannot show that the Board's reasons for her termination were pretextual. Therefore, the Board is entitled to summary judgment as to Plaintiff's race discrimination claims.

### III. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S THIRD CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII.

Plaintiff's Third Cause of Action alleges retaliation under Title VII. As discussed hereinabove, the McDonnell Douglas Corp. burden-shifting method of proof is applicable to Title VII claims. Under such, a plaintiff has the initial burden of establishing a prima facie case of retaliation. If he/she succeeds, the employer has an opportunity to present a legitimate, non-retaliatory reason for its employment action. If the employer does so, the presumption of unlawful retaliation created by the *prima facie* case drops

out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." *See* Mackey v. Shalala, supra.

The test for proving a *prima facie* case of retaliatory discharge under Title VII requires that: (1) employee engaged in protected activity, such as filing administrative complaint; (2) employer took adverse employment action against employee; and (3) a causal connection existed between the protected activity and the adverse action. Causey v. Balog, 162 F.3d 795 (4th Cir.1998). The "protected activity" alleged by Plaintiff in her Third Cause of Action is the same "report" of alleged abuse she alleges in her First Cause of Action. As discussed hereinabove in Argument I, Plaintiff cannot establish that her 2004 or 2006 "report" of the alleged 2004 abuse incident constituted "protected activity" and cannot establish a causal connection between either "report" of the alleged abuse and her termination. Therefore, Plaintiff cannot establish a prima facie case of retaliatory discharge.

Even if Plaintiff could establish a *prima facie* case of retaliatory discharge, the Board had legitimate reasons for her termination, as discussed hereinabove in Argument II-B, which Plaintiff cannot show are pretextual Therefore, the Board is entitled to summary judgment as to Plaintiff's Third Cause of Action.

## IV. **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE FMLA.**

Plaintiff's Fourth Cause of Action is for discrimination under the FMLA. Specifically, Plaintiff alleges that she was terminated for requesting and using FMLA leave. "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of McDonnell-

Douglas, [supra]." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541 (4th Cir.2006). To make out a *prima facie* case of retaliation, the Plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *See* Dodgens v. Kent Mfg. Co., 955 F.Supp. 560 (D.S.C.1997).

Plaintiff cannot show that there is a causal connection between her request for and use of FMLA leave and her termination and can, therefore, not make out a *prima facie* case of retaliation. Even if she could make out a *prima facie* case, the Board had legitimate reasons for her termination, as discussed hereinabove in Argument II-B, which Plaintiff cannot show are pretextual Therefore, the Board is entitled to summary judgment as to Plaintiff's Fourth Cause of Action.

## **CONCLUSION**

Based on the foregoing, the Board is entitled to summary judgment on each of Plaintiff's causes of action.

Respectfully submitted,

**LOGAN, JOLLY & SMITH, LLP**

   s/James W. Logan, Jr.
James W. Logan, Jr.   Fed. ID #2712
1805 North Boulevard
P.O. Box 259
Anderson, S.C. 29622
(864)226-1910
Attorneys for Defendant

Anderson, South Carolina
Dated: June 16, 2008