IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Melody Eadie, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:07-3406-HMH-WMC |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Anderson County Disabilities and | ) | |
| Special Needs Board, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States

Magistrate Judge William M. Catoe, made in accordance with 28 U.S.C. § 636(b) and Local

Civil Rule 73.02 of the District of South Carolina.[1]  Melody Eadie ("Eadie") alleges that the

Anderson County Disabilities and Special Needs Board ("Board") violated public policy by

terminating her for reporting suspected abuse.  Further, Eadie alleges racial discrimination and

retaliation because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII").  In addition, Eadie alleges retaliation for requesting leave under the Family and Medical

Leave Act ("FMLA").  The Board moves for summary judgment.  In his Report and

Recommendation, Magistrate Judge Catoe recommends granting in part and denying in part the

Board's motion.  Eadie filed specific objections to the Report and Recommendation.  The Board

---

[1]The recommendation has no presumptive weight, and the responsibility for making a
final determination remains with the United States District Court.  Mathews v. Weber, 423 U.S.
261, 270 (1976).  The court is charged with making a de novo determination of those portions of
the Report and Recommendation to which specific objection is made.  The court may accept,
reject, or modify, in whole or in part, the recommendation made by the magistrate judge or
recommit it with instructions.  28 U.S.C. § 636(b)(1).

did not file any timely objections.  On February 23, 2009, the Board filed a general objection to the Report and Recommendation.  For the reasons stated below and after a de novo review, the court grants the Board's motion for summary judgment.

## I. Factual Background

Eadie, a white female, worked for the Board from 2000 until her termination on July 19, 2006.  (Def.'s Reply Ex. A (Eadie Dep. at 15).)  From 2000 to 2002, Eadie was employed in a residential facility operated by the Board.  In April 2002, Eadie was hired by the Board to serve as a one-on-one day program specialist to care for Maurice, an individual with special needs, on a one-on-one basis.  (Def.'s Mem. Supp. Summ. J. Ex. 1 (Clark Nesbitt ("Nesbitt") Aff. ¶ 5).)  The Board wanted to bring Maurice into the Work Activity Center ("WAC") to receive additional services such as socialization and work training.  (Id. Ex. 1 (Nesbitt Aff ¶ 5).)  As a one-on-one specialist, Eadie provided assistance to Maurice and care for him throughout the day including assisting and managing his behavior, hygiene, and meals.  (Id. Ex. 1 (Nesbitt Aff ¶ 8).)  Eadie was employed as a full-time, temporary employee, which normally would not entitle her to health and dental benefits.  (Id. Ex. 1 (Nesbitt Aff ¶ 6).) However, a special accommodation was made for Eadie to receive benefits because of Maurice's needs.  (Id. Ex. 1 (Nesbitt Aff ¶ 7).)  Further, additional funding was obtained to pay Eadie a higher salary, $12.00 per hour, as opposed to the typical starting salary, $8.00 per hour. (Def.'s Mem. Supp. Summ. J. Ex. 1 (Clark Nesbitt ("Nesbitt") Aff. ¶ 7).)

At Eadie's request, Eadie had a meeting with the Board's Human Resource Manager, Martha Jones ("Jones"), a white female, on June 15, 2006.  (Id. Ex. 2 (Jones Aff ¶ 4).)  Eadie alleges that she complained during this meeting that she was being mistreated by her supervisors

and coworkers.  (Id. Ex. 2 (Jones Aff ¶ 5).)  Eadie indicated to Jones that she was upset about a written warning she received on June 13, 2006, and that she no longer wanted to ride in the Board's van with Maurice.  (Id. Ex. 2 (Jones Aff ¶ 5).)  Eadie states that she did not tell Jones at that meeting that she felt discriminated against because she was white and her supervisors were black.  (Def.'s Reply Ex. 1 (Eadie Dep. at 74).)  However, Eadie informed Jones that she did not want to ride in the van because she was forced to listen to vulgar rap music.  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 8 (Eadie Dep. at 49).)  In addition, Eadie told Jones that a black supervisor had said to her "I don't believe you are understanding what I'm saying, so let me put it in a country hick kind of way."  (Id. 8 (Eadie Dep. at 66-67, 71, 76).)  Eadie also related that she observed her supervisor, Terri Abernathy ("Abernathy"), on one occasion hiding in the shrubs secretly watching Eadie as she took consumers[2] on a walk.  (Id. 9 (Jones Dep. at 28-29).)  Eadie also related to Jones an incident in which she was asked by her supervisor to leave work and request an employment application from an unrelated place of employment to determine whether it was discriminating against black applicants.  (Id. 9 (Eadie Dep. at 77-79).)

Further, Eadie states that she informed Jones of suspected abuse by another employee on a vulnerable adult that had occurred a year earlier ("abuse incident").[3]  (Id. 9 (Eadie Dep. at  58, 71 ).)  Eadie submits that she informed Jones that she was called a "Snoop Dog" by one of the employees involved in the alleged abuse incident at a subsequent staff meeting after she had

---

[2]The Board refers to the people that they provide assistance to as consumers.

[3]The abuse incident allegedly involved two black employees who Eadie felt were unnecessarily rough in restraining a vulnerable adult in the Board's care.  When she witnessed the abuse incident, Eadie reported it to her supervisor according to the Board's procedure.  The Board did not require employees to make reports as required by the Adult Protection Act.

reported the abuse incident to her supervisor.  (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 9 (Eadie

Dep. at 71) & (Jones Dep. at 26).)  The Board's policy requires that the reporter's name remain

confidential.  (Id. Exs. (Mary Burts Dep. at 10).)

After the meeting, Jones investigated the abuse incident and learned that Eadie had

reported it to her supervisor two years earlier and that Eadie had indicated that she was not

reporting abuse and had not reported it as required by the Board's policies and South Carolina

law.  (Def.'s Mem. Supp. Summ. J. Ex. 2 (Jones Aff. ¶ 6).)  Subsequently, Jones took Eadie to

the Anderson County Sheriff's Office to file a report.  (Id. Ex. 2 (Jones Aff. ¶ 6).)  However,

according to Eadie, she requested that the Sheriff's Office stop the investigation.  (Objections 3.)

Therefore, the Sheriff's Department did not conduct any further investigation.

At the Board's request, Eadie attended a meeting on June 19, 2006, with Jones, Clark

Nesbitt ("Nesbitt"), the Director of Day Services, Abernathy, and Lynn Bowie ("Bowie"), the

Documentation and Records Coordinator.  (Pl.'s Mem. Opp'n Summ. J. Exs. (Eadie Dep. at

73).)  Nesbitt, Abernathy, and Bowie are black.  During the meeting, Eadie related that she was

being treated unfairly by others.  (Id. Exs. (Jones Dep. at 12; Abernathy Dep. at 12).)  According

to Eadie, Jones raised the issue of whether Eadie felt this way because she was white and the

others were black.  (Def.'s Reply Ex. 1 (Pl.'s Dep. at 73-74).)

After the meeting, on July 17, 2006, Nesbitt provided a written memorandum to Eadie

stating that at her request, she was no longer required to ride in the van with Maurice.  (Def.'s

Mem. Supp. Summ. J. Ex. N (July 17, 2006 Memorandum).)  The memorandum further stated

that she needed to remain within three yards of Maurice at all times and that Maurice, a

nonsmoker, should not be taken on smoke breaks.  (Id.)  Further, Eadie was prohibited from

4

taking any other consumers with her on smoke breaks.  (<u>Id.</u>)  In addition, Eadie was given a 15-minute break without Maurice.  (<u>Id.</u>)

Several observation reports in Eadie's file indicate that she was observed by Nesbitt on June 15, 2006, failing to interact with Maurice for 27 minutes.  (Pl.'s Mem. Opp'n Summ. J. Exs. (June 15, 2006 Observation Report).)  On June 20, 2006, she was observed having only one verbal contact with Maurice over a 28-minute period.  (<u>Id.</u> (June 20, 2006, Observation Report).)  Further, Abernathy observed Eadie taking a smoke break at 8:30 a.m. on June 19, 2006, leaving Maurice unattended.  (<u>Id.</u> (June 19, 2006, Observation Report).)

On July 19, 2006, Eadie was provided a memorandum informing her that her 15-minute break was scheduled from 10:35 a.m. until 10:50 a.m. daily.  (Def.'s Mem. Supp. Summ. J. Ex. O (July 19, 2006, Memorandum).)  That afternoon, around 2:00 p.m., Nesbitt observed Eadie taking a smoke break, again leaving Maurice unattended.  (<u>Id.</u> Ex. 1 (Nesbitt Aff. ¶ 10).)  According to Nesbitt, he had observed Eadie away from Maurice on numerous occasions.  (<u>Id.</u> Ex. 1 (Nesbitt Aff. ¶ 10).)  Nesbitt, in the presence of Jones and Bowie, issued a written warning during a counseling session, which Eadie refused to sign.  (<u>Id.</u> Ex. 1 (Nesbitt Aff. ¶ 11) & Ex. P (July 19, 2006 Warning).)  Jones prepared an internal memorandum stating that Eadie became argumentative during her counseling session on July 19, 2006, and she refused to return to her work station as instructed.  (<u>Id.</u> Ex. 2 (Jones Aff. ¶ 8).); (Pl.'s Mem.

Opp'n Summ. J. Exs. (July 19, 2006 Memorandum).)   Eadie was terminated on July 19, 2006.

(Pl.'s Mem. Opp'n Summ. J. Exs. (Personnel Action Form).)  In her affidavit, Jones stated that

Eadie was terminated

> based on her actions and behavior during the July 19th counseling session and
> based on her review of [Eadie's] file, which revealed repeated insubordination,
> failure to perform assigned job duties, not displaying a good job attitude toward
> coworkers and supervisors, leaving her work station without permission, leaving
> her individual unattended, and the receipt of 4 warnings in 2 years.

(Def.'s Mem. Supp. Summ. J. Ex. 2 (Jones Aff. ¶ 10).)  Jones' decision to terminate Eadie was

approved by the Board's executive director Dale Thompson, a white male.  (Id. Ex. 2 (Jones

¶ 9).)

Prior to Eadie's June 15, 2006, meeting with Jones, Eadie had been counseled regarding

her job performance.  A review of the documents submitted by the Board reveal that  Eadie was

given a written warning on July 31, 2002, and suspended for two days without pay for being

"disrespectful and irate" during a counseling session regarding following the chain of command

and clarification of duties.  (Id. Ex. E (July 31, 2002, Warning).)  On March 24, 2003, Eadie was

counseled for failing to follow directions and maintain "satisfactory or harmonious working

relationships with employees or supervisors."  (Id. Ex. F (March 24, 2003, Counseling).)  Eadie

received another counseling session on April 7, 2003, for administering medication to

consumers.  (Id. Ex. H (April 7, 2003, Counseling).)

On December 1, 2005, Eadie was counseled and orally reprimanded regarding her job

performance including leaving the consumer unattended, taking excessive smoke breaks,

inappropriate behavior in a staff meeting, and excessive use of a cell phone.  (Def.'s Mem.

Supp. Summ. J. Ex. L (December 1, 2005, Oral Reprimand).)  Previously, on May 16, 2002,

Nesbitt sent a memorandum to all staff regarding his observations of staff taking excessive smoke breaks.  (Id. Ex. C (May 16, 2002, Memorandum).)  Eadie was instructed to take smoke breaks during assigned times only.  On June 13, 2006, Eadie was issued a written warning for unsatisfactory performance because she continued "to question immediate supervisors['] job duties and decisions and or information related to her and or situations pertaining to her as well as not to her – resulting in failure to maintain harmonious working relationships with employees or supervisors."  (Id. Ex. M (June 13, 2006 Warning).)  Eadie refused to sign the warning.  (Id. Ex. M (June 13, 2006 Warning).)

## II. The Report and Recommendation

Magistrate Judge Catoe recommends (1) granting the Board's summary judgment motion on the public policy claim because temporal proximity is insufficient to establish causation; (2) granting the Board's summary judgment motion on the race discrimination claim because Eadie failed to establish a prima facie case of race discrimination; (3) denying the Board's summary judgment motion on the retaliation based on race claim because Eadie presented sufficient evidence of pretext; and (4) denying the Board's summary judgment motion on the FMLA retaliation claim because Eadie presented sufficient evidence of pretext.   (Report and Recommendation, generally.)

## III. Eadie's Objections

Eadie specifically objects to the magistrate judge's Report and Recommendation alleging that she has raised genuine issues of material fact regarding causation in support of her public policy claim and that she has established a prima facie case of race discrimination because

"genuine issues of fact remain concerning whether . . . Eadie was performing her job duties at a level that met her employer's legitimate expectations."  (Objections 1, 4.)

### IV. LEGAL DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary

8

facts existing in the record which can oppose the defendant's summary judgment motion."

Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D. Md. 1998).

## B. Title VII–Racial Discrimination

Eadie alleges that the Board terminated her because of her race in violation of

Title VII. Eadie's claims of discrimination are analyzed under the burden-shifting framework of

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).[4] This framework is as

follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of discrimination. Second, if the plaintiff succeeds in proving
> the prima facie case, the burden shifts to the defendant "to articulate some
> legitimate, nondiscriminatory reason for the employee's rejection." Third, should
> the defendant carry this burden, the plaintiff must then have an opportunity to
> prove by a preponderance of the evidence that the legitimate reasons offered by the
> defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quoting McDonnell

Douglas, 411 U.S. at 802) (internal citations omitted).

### 1. Prima Facie Case

To satisfy a prima facie case of discriminatory treatment based on race, a plaintiff must

demonstrate that (1) she is a member of a protected class; (2) her job performance met her

employer's legitimate expectations; (3) she suffered an adverse employment action; and

---

[4]There are two methods of proving a discrimination claim under Title VII:
(1) establishing discrimination through direct or circumstantial evidence that the protected trait
motivated the employer's adverse employment decision, or (2) establishing discrimination under
the McDonnell Douglas framework. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d
277, 284-85 (4th Cir. 2004); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.
2004) (applying Hill to racial discrimination Title VII claim). Eadie attempts to prove her Title
VII claim under the McDonnell Douglas framework. (Pl.'s Mem. Opp'n Summ. J. at 6-7.)

(4) similarly situated employees outside her protected class received more favorable treatment. See White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); see also Elries v. Denny's, Inc., 179 F. Supp. 2d 590, 597 (D. Md. 2002).

"Title VII prohibits discrimination based only on certain enumerated factors . . ." such as race. Archuleta v. Colorado Dept. of Institutions, Div. of Youth Servs., 936 F.2d 483, 487 (10th Cir. 1991). "Title VII does not ensure that employees will always be treated fairly or that they will be discharged only for meritorious reasons. Although the dismissal of an employee without cause may contribute to an inference of unlawful discrimination, it does not require such a finding." Id. The issue before the court is whether Eadie has established a prima facie case of racial discrimination. After considering the evidence in the light most favorable to Eadie, the court finds that she has failed to prove a prima facie case of discrimination.

The magistrate judge found that Eadie had not satisfied the second element of a prima facie case. The magistrate judge concluded that Eadie had failed to meet her employer's legitimate expectations because Eadie left Maurice unattended and took an afternoon smoke break with another consumer in direct contravention to the Board's directives. (Report and Recommendation 10.)

Eadie alleges that issues of fact exist concerning whether the Board "had legitimate expectations that . . . Eadie was not to have an afternoon smoke break." (Objections 5.) Further, Eadie argues that a reasonable inference is that the Defendant specifically did not inform Eadie that she could not take a smoke break with the intent to "trick or deceive" her. (Id. 6.) Eadie argues that "the jury could reasonably determine that Defendant deliberately issued a memorandum to Mrs. Eadie with no mention of the afternoon smoke break, then prepared a

written warning in advance, laid in wait for her to go on the 2 p.m. smoke break as she did every

day, and then immediately called her to a disciplinary meeting that had been prearranged."

(Id. 7.)

These arguments are without merit.  First, in December 2005, Eadie was counseled and

orally reprimanded for leaving Maurice unattended and taking excessive smoke breaks.  (Def.'s

Mem. Supp. Summ. J. Ex. L (Dec. 1, 2005, Oral Reprimand).)  On July 17, 2006, Eadie was

provided a written memorandum that indicated that she was allowed one 15-minute personal

break without Maurice, that she should be no more than three yards away from Maurice at all

times, that she was prohibited from allowing Maurice to be taken on smoke breaks with anyone,

and she was prohibited from taking with her any other consumers on smoke breaks.  (Id. Ex. N

(July 17, 2006 Memorandum).)   On July 19, 2006, Eadie was provided a written memorandum

setting her daily personal break from 10:35 a.m. until 10:50 a.m.  (Id. Ex. O (July 19, 2006,

Memorandum).)  That same day, Eadie took a smoke break around 2:05 p.m. without Maurice

and with another consumer.  (Id. Ex. 1 (Nesbitt Aff. ¶ 10).)  Eadie admits that she had received

the July 19, 2006, memorandum prior to taking the smoke break.  (Def.'s Reply Ex. 1 (Eadie

Dep. at 102-03).)  Plainly, Eadie was not allowed an afternoon smoke break, to be away from

Maurice, or to take another consumer on a smoke break.  Based upon the foregoing, this court

finds that Eadie cannot meet the second element of a prima facie case of race discrimination.

### C.  Retaliation Based on Race

In her response in opposition to the Board's motion for summary judgment, Eadie asserts

that there is sufficient evidence to support her retaliation claim based upon Eadie's opposition to

racial discrimination by the Board.  "In order to establish a prima facie case of retaliation, [Eadie]

11

must prove three elements:  first, that she engaged in protected activity; second, that an adverse

employment action was taken against her; and third, that there was a causal link between the

protected activity and the adverse employment action."  Mackey v. Shalala, 360 F.3d 463, 469

(4th Cir. 2004).  "[A] causal connection for purposes of demonstrating a prima facie case exists

where the employer takes adverse employment action against an employee shortly after learning

of the protected activity."  Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004).

        If an employee establishes a prima facie case of retaliation, then the burden shifts to the

employer "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory

reason for its actions."  Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

If the employer meets this burden of production, then "the burden shifts back to [Eadie] to show

that the reason is mere pretext for retaliation by proving both that the reason was false, and that

discrimination was the real reason for the challenged conduct."  Id. (internal quotation marks

omitted).  Eadie alleges that she "participated in the protected activity of opposing race

discrimination by reporting it to Defendant, she was discharged, and a causal connection was

shown by the close temporal proximity between her reports and the discharge."  (Pl.'s Mem.

Opp'n Summ. J. 10.)  Eadie was terminated within a month of engaging in protected activity.

Based on the foregoing, the court finds that Eadie has satisfied a prima facie case of retaliation.

        The Board has offered a legitimate nondiscriminatory reason for terminating Eadie.

According to the Board, Eadie was terminated based on her (1) actions and behavior during the

July 19th counseling session; (2) Jones' review of Eadie's file; and (3) the receipt of four

warnings in two years.  (Def.'s Mem. Supp. Summ. J. Ex. 2 (Jones Aff. ¶ 10).)  Therefore, Eadie

bears the burden of establishing pretext.  To prove pretext, Eadie must show that "both . . . the

reason was false, and that discrimination was the real reason" for her termination.  Jiminez v. Mary Washington College, 57 F.3d 369, 377-78 (4th Cir. 1995).  Eadie has failed to establish pretext.

### 1.  Smoking Breaks

First, in support of her pretext argument, Eadie alleges that the Board never had any problem with her taking an afternoon smoke break and that she had taken an afternoon smoke break every working day for the previous six years.  (Pl.'s Mem. Opp'n Summ. J. 12.)  However, as set forth above, Eadie was informed that she had one morning break and that she was not to leave Maurice unattended.  (Def.'s Mem. Supp. Summ. J. Ex. N (July 17, 2006 Memorandum) & Ex. O (July 19, 2006 Memorandum).)  Indisputably, after being informed that she only had one morning break, should not leave Maurice, and should not take consumers on smoke breaks, Eadie took a smoke break with a consumer and without Maurice.  (Id. Ex. 1 (Nesbitt Aff. ¶ 10).); (Def.'s Ex. 1 (Eadie Dep. at 103).)  Therefore, this is not evidence of pretext.

### 2.  Reasons for Termination

Second, Eadie argues that the Board's changing reasons for her termination are evidence of pretext because different employees testified that Eadie was fired for different reasons. (Id. 14.)  Further, Eadie argues that the Board's "lack of an actual practice of requiring discharge after four write-ups" is evidence of pretext.  (Id. 16.)  Bowie allegedly informed one of Eadie's coworkers that Eadie was terminated for not remaining within three feet of Maurice at all times. (Pl.'s Mem. Opp'n Summ. J. Exs. (Trudy Cole dep. at 22-23).)  Nesbitt testified that Eadie was terminated for failing to follow instructions and return to her work station at the conclusion of the July 19, 2006 meeting.  (Id. Exs. (Nesbitt Dep. at 10, 19).)  Jones testified that Eadie was

terminated for having received four warnings in two years and this reason is also noted on the personnel action form. (Id. Exs. (Jones Dep. at 7, 61).) However, Jones did not know whether all employees that receive three warnings within two years are discharged and agreed that Eadie had more than three and was not immediately discharged. (Id. Exs. (Jones Dep. at 7-8).) Jones made the decision to terminate Eadie after consultation with Thompson. (Def.'s Mem. Supp. Summ. J. Ex. 2 (Jones Aff. ¶¶ 9-10).)

In her affidavit, Jones stated that she terminated Eadie based on her actions and behavior during the July 19th counseling session and after review of Eadie's employment file, which revealed "repeated insubordination, failure to perform assigned job duties, not displaying a good job attitude toward coworkers and supervisors, leaving her work station without permission, leaving her individual unattended, and the receipt of 4 warnings in 2 years." (Id. Ex. 2 (Jones Aff. ¶ 10).) The Board has not offered inconsistent reasons for terminating Eadie. To the contrary, Jones, Nesbitt, and Bowie's statements as to why Eadie was terminated are consistent with the reasons Jones provided in her affidavit. Moreover, there is no evidence that the Board's policy of discharging an employee after four warnings was fabricated in order to terminate Eadie. Based on the foregoing, Eadie's argument does not support any inference that the Board's reasons for terminating Eadie were false and that retaliation based on race was the true reason.

### 3. Escalating Negative Documentation

Third, Eadie alleges that the "sudden escalation of negative documentation and observations" is evidence of pretext. (Eadie Mem. Opp'n Summ. J. 16-17.) After the

June 15, 2006 meeting when Eadie informed Jones about the alleged mistreatment and reported the abuse incident, Eadie alleges that she received fourteen[5] negative documents in her file, including one supervisor note, three observation reports, two contact reports, five memoranda, one email, one employee warning notice, and one termination notice.  (Id. at 17.)  Nesbitt testified that he instructed other members of management to prepare observation notes on Eadie after the July 17, 2006 meeting.  (Pl.'s Mem. Opp'n Summ. J. Exs. (Nesbitt Dep. at 39-41).)

However, Eadie submits that prior to June 15, 2006, she had received only eight negative documents since July 30, 2002, consisting of three counseling sessions, two written warnings, two oral reprimands, and one supervisor memorandum.   (Pl.'s Mem. Opp'n Summ. J. at 17.) Under the facts of this case, the increasing discipline is not evidence of pretext.  "Title VII protection from retaliation . . . does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers."  Valdez v. Mercy Hosp., 961 F.2d 1401, 1403 (8th Cir. 1992).

Prior to June 15, 2006, Eadie had received significant negative documentation in her employment file.  Eadie was given a written warning on July 31, 2002, and suspended for two days without pay for being "disrespectful and irate" during a counseling session regarding following the chain of command and clarification of duties.  (Def.'s Mem. Supp. Summ. J. Ex. E (July 31, 2002, Warning).)  On March 24, 2003, Eadie was counseled for failing to follow directions and maintain "satisfactory or harmonious working relationships with employees or supervisors."  (Id. Ex. F (March 24, 2003, Counseling).)  Eadie was counseled on April 7, 2003,

_____

[5]Eadie alleges that the Board created thirteen negative documents, but lists fourteen documents.

15

for administering medication to consumers.  (Id. Ex. H (April 7, 2003, Counseling).)  On

December 1, 2005, Eadie was counseled and orally reprimanded regarding her job performance

including leaving the consumer unattended, taking excessive smoke breaks, inappropriate

behavior in a staff meeting, and excessive use of a cell phone.  (Id. Ex. L (December 1, 2005,

Oral Reprimand).)

Notably, Eadie had received an earlier May 16, 2002 memorandum from Nesbitt to all

staff regarding his observations of staff taking excessive smoke breaks.  (Id. Ex. C

(May 16, 2002, Memorandum).)  Eadie was instructed to take smoke breaks during assigned

times.  On June 13, 2006, Eadie was issued a written warning for unsatisfactory performance

because she continued "to question immediate supervisors['] job duties and decision[s] and or

information related to her and or situations pertaining to her as well as not to her – resulting in

failure to maintain harmonious working relationships with employees or supervisors."  (Def.'s

Mem. Supp. Summ. J. Ex. M (June 13, 2006 Warning).)  Eadie refused to sign the warning.   (Id.

Ex. M (June 13, 2006 Warning).)  A review of pre-June 15, 2006 documents reveals that Eadie

had been counseled several times regarding her job performance and had been reprimanded for

leaving Maurice unattended and taking excessive smoke breaks.  Further, Eadie had received a

warning regarding her insubordination and inability to maintain good working relationships with

her coworkers and supervisors.  In addition, Eadie's job performance appraisal from April 3,

2006, indicates that she was deficient and needed improvement in complying with safety and

conduct rules, and Board regulations and policies; her ability "to cooperate, work, and

communicate with coworkers, supervisors, subordinates and/or outside contacts"; attendance;

creativity; and productivity.  (Def.'s Mem. Supp. Summ. J. Ex. Q (Performance Appraisal).)

Eadie alleges that the negative documentation in her employment file escalated after June 15, 2006, when she complained to Jones that she was being mistreated by her supervisors and coworkers and reported the abuse incident. As an initial matter, a number of the documents generated after June 15, 2006, are not negative documentation from the Board.

One email pertains to Eadie's FMLA request advising her that she needed to complete certain documentation regarding approval. Two of the memoranda pertain to approving Eadie's FMLA request although she had not followed the proper procedure. (Pl.'s Mem. Opp'n Summ. J. Exs. (FMLA Documents).) The June 28, 2006 contact report was initiated by Maurice's parents who expressed concern regarding Eadie's absence and its affect on Maurice. (Id. Exs. (June 28, 2006 Contact Report).) The June 11, 2006 contact report was initiated by Eadie when she informed Abernathy that she did not want to ride in the van. (Id. Exs. (June 11, 2006 Contact Report).) In addition, Eadie's file contains a memorandum dated July 19, 2006, informing Eadie that her 15-minute break was scheduled from 10:35 a.m. until 10:50 a.m. daily. (Def.'s Mem. Supp. Summ. J. Ex. O (July 19, 2006 Memorandum).) The above-mentioned documents are either neutral documentation or were not created by the Board. The contact reports were records of contacts by Eadie and Maurice's parents. The FMLA records indicated that FMLA leave was approved and requested that Eadie utilize the proper procedure.

With respect to the negative documentation, the three observation notes generally describe that Eadie was not with Maurice at all times as required. (Id. Exs. (Observation Notes).) On July 17, 2006, Nesbitt provided a written memorandum to Eadie stating that at her request, she was no longer required to ride in the van with Maurice. (Def.'s Mem. Supp. Summ. J. Ex. N (July 17, 2006 Memorandum).) The memorandum further stated that she needed to remain

17

within three yards of Maurice at all times and that Maurice, a nonsmoker, should not be taken on smoke breaks nor should any other consumers. (Id. Ex. N (July 17, 2006 Memorandum).) In addition, Eadie was given a 15-minute break without Maurice. (Id. Ex. N (July 17, 2006 Memorandum).)

On the afternoon of July 19, 2006, after being observed taking a smoke break leaving Maurice unattended, Eadie was issued a written warning, which she refused to sign. (Id. Ex. 1 (Nesbitt Aff. ¶ 11) & Ex. P (July 19, 2006 Warning).) Jones prepared an internal memorandum stating that Eadie became argumentative during her counseling session on July 19, 2006, and she refused to return to her work station as instructed. Id. Ex. 2 (Jones Aff. ¶ 8).); (Pl.'s Mem. Opp'n Summ. J. Exs (July 19, 2006 Memorandum).) Eadie was terminated on July 19, 2006, which is noted on a personnel action form. (Pl.'s Mem. Opp'n Summ. J. Exs. (Personnel Action Form).)

After review, the court agrees that there was an increase in negative documents in Eadie's file after June 15, 2006, although not the extent argued by Eadie. However, the court finds that the escalating discipline indicates that Eadie's job performance was continuing to decline and the only inference the evidence supports is that Eadie was terminated for the reasons identified by Jones. Eadie received numerous negative counseling sessions prior to June 15, 2006, and the increasing discipline is consistent with her continuing insubordination and poor job performance.

### 4. Under-Representation of White Employees

Fourth, Eadie argues that the under-representation of whites employed by the Board "supports a reasonable inference of discriminatory employment practices." (Pl.'s Mem. Opp'n Summ. J. 19.) This is wholly without merit. Schandelmeier-Bartels v. Chicago Park Dist., No. 07 CV 922, 2008 WL 4855649, at *5 (N.D. Ill. Nov. 7, 2008) (finding that the plaintiff had failed

to prove a prima facie case of employment discrimination based on "the mere fact that Plaintiffs' race was in the minority at her place of employment"). The fact that Eadie, a white female, was in the minority while employed by the Board does not raise a genuine issue of material fact that the Board's stated reasons for firing her are false and that discrimination was the true reason.

"Moreover, showing pretext in this case is even more demanding because the person who decided to terminate [Eadie], [Jones], was the same race and gender as [Eadie]. When the decision-maker is in the same class as the plaintiff, it is very difficult to show a discriminatory motive." Robinson v. United Parcel Service, Inc., 2007 WL 3484743, at *5 (N.D. Ga.) (N.D. Ga. 2007); Boice v. Southeastern Pennsylvania Transp. Authority, No. 05-4772, 2007 WL 2916188, at *10 (E.D. Pa. Oct. 5, 2007) ("Evidence that the person who made the final decision to terminate a particular plaintiff was the same race as the plaintiff undercuts any inference of discrimination."); Rhodes v. Runyon, No. Civ.A. 494CV125DD, 1995 WL 1945558, at *5 (N.D. Miss. Nov. 1, 1995) (finding that plaintiff's "claim of race discrimination pushes the limits in that the person who terminated his employment is of his same race"). The decision to terminate Eadie, a white female, was made by Jones, a white female, in consultation with Thompson, a white male. (Def.'s Mem. Supp. Summ. J. Ex. 2 (Jones Aff. ¶ 9-10).) This fact further undermines Eadie's argument that the Board's reason for her termination was false and that the true reason was retaliation. For all the reasons discussed above, Eadie has failed to meet her burden of showing pretext. The only inference that the evidence supports is that Eadie was terminated for the reasons stated by the Board. Therefore, the Board is entitled to summary judgment on this claim.

### D.  FMLA Retaliation

The magistrate judge recommended denying the Board's motion for summary judgment on Eadie's retaliation FMLA claim.  "The FMLA was enacted to help working men and women balance the conflicting demands of work and personal life."  Price v. City of Fort Wayne, 117 F.3d 1022, 1024 (7th Cir. 1997).  "It does so by recognizing that there will be times in a person's life when that person is incapable of performing her work duties for medical reasons."  Id.  The FMLA entitles eligible employees to twelve weeks of leave during a twelve-month period for, among other reasons, a serious health condition that makes the employee unable to perform employment functions.  See 29 U.S.C. § 2612(a)(1)(D) (1999).

Employers are prohibited from terminating employees in retaliation for taking FMLA leave.  "Absent direct evidence, FMLA retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework."  Jordan v. Radiology Imaging Associates, 577 F. Supp. 2d 771, 786 (D. Md. 2008).  Eadie must first establish a prima facie case of FMLA retaliation.  Id.  "If an employee establishes a prima facie case of retaliation, then the employer must offer a non-discriminatory explanation for the termination."  Id. (internal quotation marks omitted).  "If the employer meets this burden of production, then the employee bears the burden of establishing that the employer's proffered explanation is a pretext for FMLA retaliation."  Id. (internal quotation marks omitted).

Temporal proximity between the FMLA leave and Eadie's termination while "far from conclusively establish[ing] the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality."  Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006).  Eadie took FMLA leave from June 28, 2006, through July 11,

20

2006, and she was terminated on July 16, 2006.  Therefore, based on temporal proximity, Eadie

has established a valid prima facie case.  The Board has proffered a legitimate non-discriminatory

reason for terminating Eadie as discussed above.

However, Eadie has failed to advance any evidence that the Board's justification is

pretextual other than the temporal proximity of the action[6] and the arguments she raised in

support of pretext with respect to her race retaliation claim.  For the reasons discussed above,

Eadie has failed to establish pretext.  Therefore, the Board is entitled to summary judgment on

this claim.

### E. Public Policy Wrongful Discharge

Eadie objects to the magistrate judge's recommendation to grant the Board's motion for

summary judgment on Eadie's public policy wrongful discharge claim.  South Carolina

recognizes a tort of "wrongful discharge."  See Lawson v. South Carolina Dep't of Corrs., 532

S.E.2d 259, 260 (S.C. 2000).  To successfully plead a cause of action for wrongful discharge, an

at-will employee must allege that her discharge violates public policy.  See id.  "The public

policy exception [to the at-will employment doctrine] clearly applies in cases when an employer

requires an employee to violate the law or the reason for the employee's termination was itself a

violation of criminal law."  Id. at 260-61.

---

[6]"While temporal proximity is sufficient to meet the low burden required to establish a
prima facie case of retaliation in violation of the FMLA, it is not alone sufficient to establish
that an employer's legitimate, non-discriminatory reason for discharge was a pretext."  Heady v.
U.S. Enrichment Corp., No. 04-5762, 2005 WL 1950793, at *4 (6th Cir. Aug. 16, 2005)
(unpublished) (citing Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 317 (6th Cir.
2001)).  Eadie "must provide further evidence that creates a genuine issue of material fact
regarding the truth of [the Board's] proffered reasons for her discharge."  Id.

Eadie alleges that she was discharged for reporting suspected abuse.  S.C. Code Ann. §

43-35-25(A) provides that listed persons "having reason to believe that a vulnerable

adult has been or is likely to be abused, neglected, or exploited shall report the incident in

accordance with this section."   Eadie formally reported the abuse incident for the second time at

the June 15, 2006 meeting with Jones.  Eadie was terminated on July 19, 2006.  Other than the

events occurring within a relatively short period of time, slightly more than one month, there is

no evidence that the Board terminated her for reporting the abuse incident.

Eadie cites Evans v. Taylor Made Sandwich Co., 522 S.E.2d 350, 354 (S.C. Ct. App.

1999), for the proposition that temporal proximity is sufficient to establish causation.  The court

disagrees.  In Evans, one of the plaintiffs was terminated "only one hour after the Department's

investigation" and the other plaintiff was terminated the next time she reported to work.  The

court found as follows:

> We find the record replete with evidence for the jury to conclude the excessive
> absenteeism reason articulated for discharging Evans and Eagleton amounted to
> mere pretext because Friar knew of the absenteeism weeks in advance yet failed to
> take action until the Department investigated. Evans and Eagleton testified other
> employees, who did not sign the complaint with the Department, had equal or worse
> absenteeism records, yet were not fired.  Numerous witnesses testified Friar
> repeatedly warned employees he would fire them for complaining.

Evans v. Taylor Made Sandwich Co., 522 S.E.2d 350, 354 (S.C. Ct. App. 1999).  Thus, the court

concluded that the jury properly determined that the plaintiffs' terminations violated the public

policy of South Carolina.  The facts of Evans are distinguishable from the case at bar.

Eadie alleges that there is question of fact regarding whether the Board informed the

alleged abuser that Eadie had made the report because she was verbally attacked and called

"Snoop Dog" in a staff meeting by that employee.  (Objections 2); (Pl's Mem. Opp'n Summ. J. 4

22

Exs. (Eadie Dep. at 56; Joann Whitner ("Whitner") Dep. at 22-23; Abernathy Dep. at 17-18).)

One of the alleged abusers testified that she believed that Eadie was the reporter because she saw

Eadie observing the incident. (Id. Exs. (Whitner Dep. at 20).)  There is evidence that Eadie told

the other alleged abuser that she had made the report. (Id. Exs. (Whitner Dep. at 22).)  Moreover,

Eadie alleges that she was forced to file a police report and no other employee had ever been

required to file a police report. (Id. Exs. (Jones Dep. at 40-41).)

The comment by a coworker and reporting the abuse incident to the police as required by

law does not support any inference that the abuse incident motivated Jones' decision to terminate

her.  Aside from the time of Eadie's termination and her reporting the abuse incident for the

second time, there is no evidence that her report played any role in her termination.  As discussed

above, Eadie had been repeatedly disciplined for unsatisfactory job performance and

insubordination, which culminated in her refusing to return to work on July 19, 2006, after being

issued a written warning for taking an unauthorized smoke break and leaving Maurice unattended

contrary to the Board's specific directives.  Based on the foregoing, the Board is entitled to

summary judgment on this claim.

It is therefore

**ORDERED** that the Board's motion for summary judgment, docket number 37, is

granted.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
March 3, 2009

23